UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

DREW GARRET WASHINGTON
individually and behalf of all others
similarly situated,

    Plaintiff,

   v.

CRAB ADDISON, INC.,

    Defendant.
_____/

No. C 08-5551 PJH

**ORDER GRANTING MOTION TO DISMISS IN PART AND DENYING IT IN PART, AND GRANTING MOTION TO STRIKE**

Before the court is defendant's motion to dismiss for failure to state a claim and motion to strike references to injunctive relief. Having read the parties' papers and carefully considered their arguments and the relevant legal authority, the court hereby GRANTS the motion to dismiss in part and DENIES it in part, and GRANTS the motion to strike.

## BACKGROUND

This is a wage-and-hour case, filed as a proposed class action. Plaintiff and putative class representative Drew Garret Washington ("Washington") worked as a host, server, and bartender at Joe's Crab Shack, a restaurant owned by defendant Crab Addison, Inc. ("CAI"). During this time, CAI allegedly failed to provide Washington and other members of the putative class with the appropriate breaks or to compensate them for overtime, and required them to purchase company uniforms and cover unpaid restaurant bills with their own money.

On August 28, 2008, approximately two months after being terminated, Washington filed his original complaint in San Francisco County Superior Court. On December 11, 2008, CAI answered the complaint. The next day, CAI removed the case

to this court under the Class Action Fairness Act, 28 U.S.C. § 1332(d).  A scheduling order issued May 4, 2009, set May 14, 2009 as the last day to amend the complaint or to add parties, and June 5, 2009 as the last day to file a motion to dismiss.

On May 14, 2009, Washington filed the first amended complaint, in which he added defendants Joe's Crab Shack Holding, Inc. and Crab Addison, Inc.  He also shortened the class period but made no other changes to the allegations of the original complaint.  CAI asserts, and Washington does not dispute, that Washington failed to request or obtain leave to file the amended complaint pursuant to Federal Rule of Civil Procedure 15(a)(2).

At a case management conference on January 18, 2010, Washington notified the court of his intent to add an "off the clock" claim to the complaint.  On March 31, 2010, the court granted Washington's motion for leave to file a second amended complaint ("SAC"). The SAC was filed on April 1, 2010, alleging 10 causes of action, three of which are at issue in the present motion.

In his first cause of action, Washington asserts a claim under California Labor Code § 510 for willful failure to pay overtime.  In his fourth cause of action, he alleges fraud for misrepresenting employees' rights to seek compensation for overtime and monies expended on defendant's behalf.  In his sixth cause of action, Washington asserts a claim under California Wage Order No. 7-2001 and California Labor Code §§ 218.5, 226.7, and 512 for failure to provide rest breaks and meal periods.[1]  The other causes of action are not disputed in this motion except to the extent they contain references to injunctive relief.

In support of these claims, Washington alleges that CAI "routinely" (1) denied employees their overtime wages, (2) denied employees their proper meal and break periods after five hours of consecutive work, (3) required employees to perform unpaid,

---

[1] As correctly noted in Washington's opposition to defendant's motion, Wage Order No. 5-2001, not Wage Order No. 7-2001, applies to the restaurant industry.

1  "off the clock" duties including but not limited to, cleaning the restaurants and attending
2  meetings held by defendant's managers, (4) required employees to purchase uniforms
3  from defendant's on-line store without reimbursement, and (5) required employees to
4  cover customers' unpaid bills.

5       CAI seeks an order dismissing the first, fourth, and sixth causes of action for
6  failure to state a claim, and striking all references to injunctive relief.  Washington
7  opposes the motion as to the first and sixth causes of action, but not the fourth.  He also
8  argues that the motion should be denied because it is untimely.

## DISCUSSION

A.    Motion to Dismiss

    1.    Legal Standard

A motion to dismiss under Rule 12(b)(6) tests for the legal sufficiency of the claims alleged in the complaint.  Ileto v. Glock, Inc., 349 F.3d 1191, 1199-1200 (9th Cir. 2003).  Review is limited to the contents fo the complaint.  Allarcom Pay Television, Ltd. V. Gen. Instrument Corp., 69 F.3d 381, 385 (9th Cir. 1995).  To survive a motion to dismiss for failure to state a claim, a complaint generally must satisfy only the minimal notice pleading requirements of Federal Rule of Civil Procedure 8.

Rule 8(a)(2) requires only that the complaint include a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Specific facts are unnecessary – the statement need only give the defendant "fair notice of the claim and the ground upon which it rests."  Erickson v. Pardus, 551 U.S. 89, 93 (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  All allegations of material fact are taken as true.  Id. at 94.  However, a plaintiff's obligations to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Twombly, 550 U.S. at 555 (citations and quotations omitted).  Rather, the allegations in the complaint "must be enough to raise a right to relief above the speculative level.  Id.

A motion to dismiss should be granted if the complaint does not proffer enough

3

facts to state a claim for relief that is plausible on its face. See id. at 558-59. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n] '– 'that the pleader is entitled to relief.'" Ashcroft v. Iqbal, __ U.S. __, 129 S.Ct. 1937, 1950 (2009).

  2. Defendant's Motion

    a. Whether the first, fourth, and sixth causes of action state a claim

In the first cause of action, Washington alleges that CAI withheld overtime pay in violation of California Labor Code § 510(a). Labor Code § 510(a) requires employers to pay overtime rates to any employee working "in excess of eight hours in one workday and . . . 40 hours in any one workweek."

CAI contends that the complaint merely recites the relevant legal standards and asserts conclusory allegations that cannot survive the level of scrutiny demanded by the Supreme Court in Twombly and Iqbal. Specifically, CAI asserts that Washington's failure to allege that CAI knew about the uncompensated hours renders the first cause of action inadequate.

In the fourth cause of action, Washington alleges that CAI knowingly misrepresented Washington's obligations and legal rights. Because he purportedly relied on this misrepresentation, he claims CAI committed fraud.

CAI argues that the allegations fail to satisfy even the basic pleading requirements, much less the heightened hurdle of Federal Rule of Procedure 9(b). In response, Washington has withdrawn the fourth cause of action.

In his sixth cause of action, Washington alleges that CAI employees regularly worked in excess of five hour shifts without being afforded the appropriate breaks or meal periods as required by Labor Code §§ 226.7 and 512 and Wage Order No. 5-2001.

CAI brands this claim, too, as insufficient for want of detail. Specifically, CAI avers that Washington's claim can proceed only if he alleges that CAI actively denied meal breaks or rest periods.

The motion is GRANTED as to the fourth cause of action, and DENIED as to the first and sixth causes of action. Although Washington's complaint is indeed skeletal, he has satisfied the minimum requirements of Rule 8. His allegation – that CAI employed him for a specified period during which it routinely denied him the appropriate breaks and overtime compensation – does state a claim that, if true, entitles him to relief.

Ultimately, Washington may have to prove that CAI affirmatively impeded class members from taking the appropriate breaks and that CAI supervisors had reason to know of plaintiffs' uncompensated overtime hours. However, he does not yet have to prove his claims, and the allegations are sufficient for pleading purposes. The cases CAI cites in connection with the missed rest period claim address the evidentiary standards of summary judgment and class certification, not the adequacy of the pleadings. Furthermore, as district court cases, they are merely persuasive, not controlling.

With regard to the uncompensated overtime claim, CAI cites one seemingly relevant circuit case, Forrester v. Roth's IGA Foodliner, 646 F.2d 413 (9th Cir. 1981). But defendant's reliance on this case is misplaced for two reasons.

First, the Forrester court assessed a claim brought under § 207 of the federal Fair Labor Standards Act (FLSA), while the instant claim arises under California Labor Code § 510(a). Section 203(g) of the FLSA defines "employ" to include "suffer or permit to work" which courts have interpreted to mean "with the knowledge of the employer." Id. at 414 (internal citations omitted). Thus, a claim brought under FSLA § 207 may arguably require proof of some level of employer knowledge. In contrast, California Labor Code § 510 does not contain this statutory language and cannot be subjected to the same analysis. Indeed, "state law may provide employers with greater protection than the FLSA." Morillion v. Royal Packing Co., 22 Cal. 4th 575, 592 (2000).

Second, even under a Forrester analysis, Washington's claim survives a motion to dismiss. In Forrester, the plaintiff "deliberately omitted the inclusion of those [overtime] hours from his time sheet even though he admittedly knew he would have

5

been paid for those hours." 646 F.2d at 414. Accordingly, the court did not conclude that an employer's actual knowledge of the overtime was a per se element of the claim that needed to be pled to survive a motion to dismiss. Rather, it held simply that employers are not liable for violations of § 207(a) "where the acts of an employee prevent an employer from acquiring knowledge . . . of alleged uncompensated overtime hours." Id. at 414-15.

        b.     Whether the motion is timely

Washington claims that CAI's motion to dismiss violated the pre-trial scheduling order that set June 5, 2009 as the last day to file a motion to dismiss. He contends that after being served with the SAC, defendant could only move to dismiss the parts of the complaint that had been amended. Thus, Washington argues that this motion, filed ten months after the original deadline and not pertaining to matters newly alleged in the SAC, should be dismissed as untimely.

Washington fails to cite authority for the proposition that defendants may move to dismiss only the specific portions of a complaint that were most recently amended.[2] Because the court is unaware of such a rule, defendant's motion did not violate the pretrial scheduling order and need not satisfy the "good cause" showing of Federal Rule of Civil Procedure 16(b)(4).

B.    Motion to Strike

In addition to money damages, Washington seeks injunctive relief. CAI has moved to strike all references to injunctive relief found in SAC ¶¶ 39, 50, 53, and 61, and ¶ (k) in the prayer for relief.

    1.    Legal Standard

Motions to strike made under Federal Rule of Civil Procedure 12(f) are generally reserved to eliminate invalid defenses but may serve generally to excise "any

---

[2] The only case cited merely affirms judicial discretion in denying a motion to join a defendant after the scheduling order deadline. See Johnson v. Mammoth Recreations, Inc., 975 F.2d 604, 610 (9th Cir. 1992).

6

redundant, immaterial, impertinent, or scandalous matter." Accordingly, a court may strike a prayer for relief which is not available as a matter of law. Tapley v. Lockwood Green Engineers, Inc., 502 F.2d 559, 560 (8th Cir. 1974); Lopez v. Wachovia Mortg., 2009 WL 4505919, at *6 (E.D. Cal. Nov. 20, 2009). Rule12(f) serves primarily to "avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." Fantasy, Inc. v. Fogerty, 984 F.2d 1524, 1527 (9th Cir. 1993) (citations omitted), rev'd on other grounds, 510 U.S. 517 (1994).

2.   Defendant's Motion

CAI argues that Washington lacks standing to seek injunctive relief because he no longer works for CAI and therefore would not suffer personal injury from continuing labor code violations. CAI also contends that a named class representative who does not himself have standing can not seek injunctive relief on behalf of unnamed class members. Additionally, CAI makes an unsupported claim that the availability of money damages precludes a showing of "irreparable harm."

Washington does not dispute the contention that former employees lack standing to seek to enjoin an employer's behavior. Nevertheless, he argues that the law allows former employees to seek injunctive relief on behalf of a putative class that includes current employees.

In order to establish Article III standing, a plaintiff must show (1) an injury in fact that is concrete and particularized, and actual or imminent; (2) that the defendant's conduct proximately caused the injury; and (3) it must be likely, as opposed to merely speculative, that a favorable decision will redress the injury. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992).

In Walsh v. Nevada Dept. of Human Resources, the Ninth Circuit determined that a former employee of the state department could not seek injunctive relief because she did not seek reinstatement. 471 F.3d 1033, 1036-37 (9th Cir. 2006). Because the plaintiff would not be involved with the department in the future, it was unlikely that injunctive relief would "redress the injury." See id.

Washington's counter-argument, that a former employee can seek injunctive relief on behalf of a class that includes current employees, even if he would not have standing individually, ultimately lacks persuasive authority. Nevertheless, this issue is not disposed of, as CAI seems to argue, in the recently-decided Ninth Circuit case, Dukes v. Wal-Mart Stores, Inc., 603 F.3d 571 (9th Cir. 2010).

Dukes merely affirms the proposition articulated in Walsh, that former employees lack standing to seek injunctive relief from their former employers. Dukes, 603 F.3d at 623. It does not directly address the more nuanced issue of whether a former employee can seek injunctive relief on behalf of current employees within the class. Indeed, the dispute in Dukes involved class members that were not employed at the start of suit, not class representatives.

The remaining issue – whether a class representative who will not personally suffer injury can seek injunctive relief on behalf of unnamed class members who will – is controlled by Hodgers-Durgin v. de la Vina, 199 F.3d 1037, 1045 (9th Cir. 1999). In Hodgers-Durgin, plaintiffs sought injunctive relief from the U.S. Border Patrol's allegedly discriminatory detention practices. Id. at 1038-39. The court found that the named plaintiffs had not shown themselves sufficiently likely to suffer imminent harm to satisfy the criteria for injunctive relief. Id. at 1045. Most importantly, the court ruled that any potential injury suffered by "unnamed members of the proposed class . . . is simply irrelevant." Id. In sum, "unless the named plaintiffs are themselves entitled to seek injunctive relief, they may not represent a class seeking that relief." Id.

Though Hodgers-Durgin was decided on summary judgment, its reasoning applies here. The instant claim does not depend on a disputed fact; both parties agree that Washington was not employed by CAI when he filed suit. Thus, the issue is a legal one – the availability of injunctive relief.

Washington makes no attempt to distinguish this Ninth Circuit decision. Instead, he relies on three district court decisions. Defendant, too, cites district court decisions in support of its interpretation. Though none of these opinions bind this court, the

8

reasoning offered by defendant's cases is more persuasive and better-aligned with controlling precedent.

Washington first relies on Wofford v. Safeway Stores, Inc., in which the court allowed a former employee to represent current employees in a Title VII class action. 78 F.R.D. 460, 490 (N.D. Cal. 1978). The court noted that "a rule disqualifying discharged employees from representing current employees as a matter of law would be intolerable, since it would allow an unscrupulous employer to immunize himself from class action suits." Id., 78 F.R.D. at 490 n.6. Though Wofford involves discrimination, the underlying reasoning may well apply to the case at bar: current employees are less likely to bring suit for fear of retaliation and encouraging potential class representatives to stay in the employ of unlawful employers would expose them to undue hardship.

Nevertheless, the Wofford court was gauging the commonality of interests for class certification. In so doing, the court weighed the "dangers to Title VII enforcement" against the "dangers arising from the differing interests of former and current employees." Id. There is no indication that courts should engage in a similar balancing test to determine the presence of legal standing. Indeed, the court in Richards v. Ernst & Young LLP distinguished Wofford on those grounds. 2010 WL 682314 at *3 (N.D. Cal. Feb. 24, 2010).

On the other hand, the court in Ellis v. Costco Wholesale Corp. does address the issue of standing and concludes that requiring employees to "continue to work in jobs where they face discrimination in order to challenge the discrimination would pervert Article III's injury-in-fact requirement." 240 F.R.D. 627, 637 (N.D. Cal. 2007) (emphasis added). This conclusion appears to run counter to the Hodgers-Durgin holding. As such, a subsequent district court decision found it unpersuasive and refused to extend it to a case, like the one at bar, that did not involve discrimination. Napoto v. DHL Exp. (USA), Inc., 2009 WL 1974412 at *4 (N.D. Cal. Jul. 2, 2009).

Washington's final case, Johnson v. GMRI, Inc. best approximates the instant case: it involved a motion to strike reference to injunctive relief from a wage-and-hour

9

class action complaint brought by a former employee. 2007 WL 2462101 at *1 (E.D. Cal. Aug. 27, 2007). Relying on Wofford, the court found that "public policy purposes dissuade striking injunctive relief at this early stage." Id. at *5. Nevertheless, the courts in both Richards and Napoto found this reasoning to be unpersuasive and unsupported by controlling precedent. Richards, 2010 WL 682314 at *3; Napoto, 2009 WL 1974412 at *4. This court agrees.

## CONCLUSION

In accordance with the foregoing, the motion to dismiss is GRANTED as to the fourth cause of action, with prejudice, and DENIED as to first and sixth causes of action. The motion to strike is GRANTED.

**IT IS SO ORDERED**

Dated: June 18, 2010

PHYLLIS J. HAMILTON
United States District Judge