**United States District Court**
For the Northern District of California

1

2

3

4

5       UNITED STATES DISTRICT COURT

6       NORTHERN DISTRICT OF CALIFORNIA

7

8

9
DREW GARRETT WASHINGTON,
10
        Plaintiff,                          No. C 08-5551 PJH
11
    v.                                      **ORDER DENYING MOTION FOR**
12                                          **CLASS CERTIFICATION**
JOE'S CRAB SHACK, et al.,
13
        Defendants.
14  _____/

15          Plaintiff's motion for an order certifying the class came on for hearing before this

16  court on July 7, 2010.  Plaintiff appeared by his counsel Michael Ng, Michael Von

17  Loewenfeldt, and Daniel L. Feder, and defendants appeared by their counsel Michael S.

18  Kun.  Having read the parties' papers and carefully considered their arguments, and good

19  cause appearing, the court hereby DENIES the motion.

20                              **INTRODUCTION**

21          This is a case alleging violations of California wage and hour laws.  Plaintiff Drew

22  Garrett Washington ("plaintiff") asserts that defendant Crab Addison, Inc. ("Crab Addison"),

23  a Texas company that operates a number of Joe's Crab Shack restaurants, has violated its

24  employees' rights by failing to provide them with meal and rest breaks; allowing its

25  restaurant managers to manipulate employee time records to deprive employees of pay for

26  all hours worked (including overtime and missed meal break pay); requiring employees to

27  perform work "off the clock" (to perform work without pay); and requiring employees to pay

28  for their own employer-mandated uniforms.

**United States District Court**
For the Northern District of California

1    Plaintiff asserts nine causes of action – (1) a claim of failure to pay overtime, in

2    violation of California Labor Code § 510; (2) a claim of unfair business practices under

3    California Business & Professions Code § 17200; (3) a claim of unjust enrichment; (4) a

4    claim of failure to provide accurate itemized wage statements, in violation of California

5    Labor Code § 226; (5) a claim of failure to provide rest breaks and meal periods, in violation

6    of California Wage Order No. 7-2001, and California Labor Code §§ 218.5, 226.7, and 512;

7    (6) a claim that defendant's policy that employees purchase and wear defendant's clothing

8    and accessories violates California Labor Code § 2802 and California Code of Regulations

9    § 11040(9)(A); (7) a claim that defendant's policy that employees purchase and wear

10   defendant's clothing and accessories violates California Labor Code

11   § 450; (8) a claim of failure to pay minimum wage for "off-the-clock" work, in violation of

12   California Labor Code § 1194; and (9) a claim for declaratory relief.

13   Plaintiff now seeks an order pursuant to Federal Rule of Civil Procedure 23,

14   certifying a plaintiff class consisting of "all non-exempt restaurant employees employed by

15   Crab Addison at Joe's Crab Shack restaurants in California from January 1, 2007, through

16   the present."

17                              **BACKGROUND**

18   Crab Addison, a nationwide chain based in Texas, owns and operates 11 Joe's Crab

19   Shack restaurants in California.  The restaurants are located in Long Beach, San

20   Francisco, Newport Beach, Industry, Ventura, Oceanside, Rancho Cucamonga, Garden

21   Grove, Sacramento, and San Diego (two locations).[1]

22   Since January 1, 2007, Crab Addison has employed approximately 3841 non-

23   exempt employees in California, and employs approximately 800 employees in California at

24   any given time.  These include "front of the house" employees who interact with customers

25   (servers, bartenders, hosts), and "back of the house" employees (cooks, dishwashers).

26

27   _____

28   [1] According to defendant, Joe's Crab Shack owns two additional restaurants that are not included in the present lawsuit, one located in Redondo Beach and another in San Diego (third location).

2

United States District Court

For the Northern District of California

1  Scheduling is done individually by each restaurant.  Some employees, particularly servers,

2  are scheduled to work shifts of four hours or less.

3      Plaintiff worked at the Joe's Crab Shack at Fisherman's Wharf in San Francisco,

4  from September 14, 2007, to June 16, 2008.  During that time he held the positions of host,

5  server, and bartender.

6      Crab Addison uses a computerized point-of-sale system known as "Aloha" for

7  electronically recording its employees' hours and restaurant sales.  Each employee is

8  provided with his/her own "Aloha card," which is used to "clock in" and "clock out of" the

9  Aloha system at the beginning and end of each shift, and at the beginning and end of

10  unpaid meal breaks.  Employees are paid based on the hours worked, as electronically

11  recorded by the Aloha system.  The system also creates a report that identifies which

12  employees on any given day clocked in and out for meal breaks (and for how long).

13      An employee cannot alter the "clock in" or "clock out" times for his/her shifts or meal

14  breaks, once entered, although managers do have the ability to make such changes

15  manually.  The Aloha system keeps records of any such changes and can produce reports

16  that show any changes made to a particular employee's time entry.

17      Crab Addison's "Manager's Manual for Restaurants Operating in the State of

18  California" ("California Manager's Manual"), relevant portions of which are attached to the

19  Declaration of Kevin Cottingim (Crab Addison's Senior Vice President for Human

20  Resources), details the company's written policies regarding meal periods and rest breaks.

21      Crab Addison's written policy is to provide all California employees that work more

22  than five hours with a meal period of at least 30 minutes (unless the employee works no

23  more than six hours and agrees to waive the meal period).  If an employee works more

24  than ten hours, Crab Addison's policy is to provide the employee with a second meal period

25  of at least 30 minutes (unless the employee works no more than 12 hours and agrees to

26  waive the second meal period and has taken the first meal period).  Crab Addison's policy

27  is to provide all hourly California employees with a ten-minute rest period for each four

28  hours worked.

3

United States District Court

For the Northern District of California

1   Crab Addison explains the meal-period and rest-break policies to California

2   employees during orientation, training, and in periodic meetings.  In addition, posters at

3   each restaurant explain the employees' right to take meal and rest breaks.

4   Crab Addison's scheduling policies expressly recognize that the nature of restaurant

5   work makes it difficult for an employee (such as a server, cook, bartender, or host) to take

6   a 30-minute break, unless another employee is assigned the work responsibilities of the

7   employee on break.  According to the Cottingim Declaration, Crab Addison employs

8   "breakers" to relieve employees so that they can take the breaks, and also provides

9   payment of one hour of wages whenever an employee does not receive a meal or rest

10  period.

11  Plaintiff claims, however, that in practice, Crab Addison ignores these written

12  policies.  Plaintiff asserts that Crab Addison's own records show that its managers do not

13  schedule or provide meal or rest breaks on any consistent basis – and that (based on a

14  20% sampling) a minimum of 1/3 of the eligible breaks are not taken.  Plaintiff also

15  contends that the same sample of payroll summaries reveals that Crab Addison did not pay

16  those employees for the missed meal breaks.  He asserts that this finding is consistent with

17  his own experience at the Fisherman's Wharf Joe's Crab Shack, where he claims he was

18  not provided with a 30-minute break for 71% of the 126 shifts for which a meal break was

19  required.

20  Plaintiff contends, based on declarations from six employees or former employees of

21  Joe's Crab Shack, that "[c]lass member declarations from [Crab Addison's] restaurants

22  across California are congruent with the consistent pattern demonstrated in the class-wide

23  data."  According to those six prospective class members, they were frequently unable to

24  take meal breaks because they could not take their breaks without abandoning a table full

25  of customers, the bar, their hostess duties, or their kitchen responsibilities.  Crab Addison

26  asserts, however, that four of plaintiff's six declarants signed meal break waivers.

27  In addition, Crab Addison has provided declarations from 21 California employees,

28  19 of whom state that Crab Addison made meal and rest breaks available, but that they

4

United States District Court

For the Northern District of California

1  sometimes (or always) chose not to take them.  Crab Addison notes that plaintiff himself

2  admitted in his responses to requests for admission that he took timely meal breaks, and

3  also that he had no knowledge of meal and rest break practices at any other restaurant

4  other than the one he was employed at, and had not even been to Crab Addison's other

5  California restaurants.

6       Crab Addison also has a written policy that warns managers that it is unlawful to edit

7  an employee's time records to avoid paying overtime or missed break pay.  Plaintiff

8  contends, however, that because the managers have the ability to alter an employee's

9  electronic time records, the system is subject to abuse.  Three of plaintiff's six declarants

10 state that their managers routinely engaged in such manipulations to reduce labor costs.

11 Plaintiff himself claims that records produced by Crab Addison in discovery show that his

12 time was shortened by managers, on at least 12 of his shifts.  Plaintiff refers to this as time

13 "shaved off," and claims that in his case, it varied from one hour to six.

14      Crab Addison's written policies also provide for payment of overtime worked, and

15 expressly prohibit any "off-the-clock" work (work performed before an employee has

16 clocked in, or after he/she has clocked out).  Mr. Cottingim states in his declaration that he

17 has repeatedly reiterated that employees may not be permitted to work "off the clock" and

18 that managers will be terminated if they permit it, and that he in fact did terminate the one

19 manager he found who allowed an employee to work "off the clock."

20      Plaintiff claims, however, that Crab Addison fails to pay its employees for all time

21 worked, by allowing its managers to alter an employee's "clocked out" time, and by

22 requiring employees to clock out before they complete their work.  As an example, plaintiff

23 cites to the declaration of one prospective class member, who stated that Crab Addison's

24 managers routinely required her to clock out a few minutes before the end of her six-hour

25 shift, and then required her to remain at work to complete her end of shift responsibilities

26 ("side work" – filling salt and pepper shakers, cleaning tables, arranging silverware,

27 paperwork).

28      Nevertheless, most of Crab Addison's declarants state that they have been paid for

United States District Court
For the Northern District of California

1   all the time they worked at Joe's Crab Shack, and that they have never been asked to work

2   off-the-clock and have not heard of anyone else being told to do so.  They state that they

3   "punch out" only after they have completed their work.

4   　　　　Finally, Crab Addison requires its California hourly employees – bartenders, servers,

5   hosts, and kitchen staff, to wear "Joe's Crab Shack" T-shirts while working.  The T-shirts

6   are also sold to the public at "retail stores" located in each restaurant.  Crab Addison's

7   written policy requires managers to provide employees with as many T-shirts as they need,

8   but plaintiff claims that in reality this policy is ignored.  According to plaintiff and five of his

9   six declarants, employees are given at most one or two shirts when they begin their

10  employment, but are then required to purchase, without reimbursement, any additional T-

11  shirts they may need for work.  However, a number of Crab Addison's declarants state that

12  they have been provided T-shirts in accordance with the written policy.

13  　　　　According to plaintiff, Crab Addison uses an inventory program known as

14  "CrunchTime" to record the number of T-shirts ordered by each restaurant and the number

15  of T-shirts sold, and also gives specific guidance to managers regarding the tracking and

16  maximization of retail sales of items (such as T-shirts).  However, plaintiff asserts, the

17  California Manager's Manual and other training materials contain no guidance on recording

18  the number of T-shirts provided to employees.  Plaintiff claims that this confirms that Crab

19  Addison's hourly employees are required to purchase their T-shirts just like members of the

20  general public.  He argues that Crab Addison's failure to provide free T-shirts to employees

21  can be easily confirmed by comparing CrunchTime's record of T-shirt orders against the

22  number of T-shirts sold.

23  　　　　　　　　　　　　　　　　**DISCUSSION**

24  A.　　Legal Standard

25  　　　　The decision whether to certify a class is committed to the discretion of the district

26  court and guided by Rule 23 of the Federal Rules of Civil Procedure.  Cummings v.

27  Connell, 316 F.3d 886, 895 (9th Cir. 2003).  A plaintiff seeking to represent a class must

28  satisfy the threshold requirements of Rule 23(a), as well as the requirements for

United States District Court

For the Northern District of California

1   certification under one of the subsections of Rule 23(b).  See Fed. R. Civ. P. 23; see also

2   Zinser v. Accufix Research Inst., Inc., 253 F.3d 1180, 1186 (9th Cir. 2001).

3          A district court may certify a class only if it determines that the plaintiff has met his or

4   her burden.  General Tel. Co. of Southwest v. Falcon, 457 U.S. 147, 158-61 (1982); Dukes

5   v. Wal-Mart Stores, Inc., 603 F.3d 571, 580 (9th Cir. 2010).  While it is generally improper,

6   in making this determination, "to advance a decision on the merits to the certification

7   stage," Dukes, 603 F.3d at 586 (citation and quotation omitted), it may sometimes be

8   "necessary for the court to probe behind the pleadings before coming to rest on the

9   certification question," id. at 580 (citation and quotation omitted).

10  B.     Plaintiff's Motion

11         Plaintiff argues that the Rule 23(a) requirements are met in this case, and that the

12  class is appropriate for certification under Rule 23(b)(3).

13         In opposition, Crab Addison contends that the class should not be certified, because

14  plaintiff has not met his burden under Rule 23(a) of showing commonality and typicality, or

15  of showing that he is an adequate representative.  Crab Addison also asserts that the class

16  proposed by plaintiff does not qualify under Rule 23(b)(3), because plaintiff has not shown

17  that common issues predominate over questions affecting only individual members.

18         1.     Rule 23(a)

19         Under Rule 23(a), a case is appropriate for certification as a class action only if it

20  meets four requirements:

21         (1) the class is so numerous that joinder of all members is impracticable; (2)
           there are questions of law or fact common to the class; (3) the claims or
22         defenses of the representative parties are typical of the claims or defenses of
           the class; and (4) the representative parties will fairly and adequately protect
23         the interests of the class.

24  Fed. R. Civ. P. 23(a).  These four requirements are referred to as "numerosity,"

25  "commonality," "typicality," and "adequacy of representation."  See United Steel, Paper &

26  Forestry, Rubber, Manufacturing Energy, Allied Industrial & Service Workers Int'l Union,

27  AFL-CIO, CLC ("United Steel"), 593 F.3d 802, 806 (9th Cir. 2010).

28         The numerosity requirement "requires examination of the specific facts of each case

7

United States District Court

For the Northern District of California

1   and imposes no absolute thresholds." General Tel. Co. of the Northwest, Inc. v. EEOC,

2   446 U.S. 318, 330 (1980).  Although a plaintiff is not required to denote a precise number of

3   class members, "[t]he central question is whether Plaintiffs have sufficiently identified and

4   demonstrated the existence of the numbers of persons for whom they speak." Schwartz v.

5   Upper Deck Co., 183 F.R.D. 672, 680-81 (S.D. Cal. 1999).  Here, the parties do not dispute

6   that the proposed class is sufficiently numerous to meet the standard of Rule 23(a)(1).

7       "The commonality and typicality requirements of Rule 23(a) tend to merge," as

8   "[b]oth serve as guideposts for determining whether under the particular circumstances

9   maintenance of a class action is economical and whether the named plaintiff's claim and

10  the class claims are so interrelated that the interests of the class members will be fairly and

11  adequately protected in their absence." Falcon, 457 U.S. at 157 n.13.  Nevertheless, each

12  of the two factors does "serve[ ] a discrete purpose." Dukes, 603 F.3d at 613 n.37.

13      "Commonality focuses on the relationship of common facts and legal issues among

14  class members." Id. at 599.  Rule 23(a)(2) is permissive, and "[a]ll questions of fact and

15  law need not be common to satisfy the rule." Id. (quoting Hanlon v. Chrysler Corp., 150

16  F.3d 1011, 1019 (9th Cir. 1998)).  "[O]ne significant issue common to the class may be

17  sufficient to warrant certification," and "[t]he existence of shared legal issues with divergent

18  factual predicates is sufficient." Id. (citation and quotation omitted).

19      By contrast, "typicality focuses on the relationship of facts and issues between the

20  class and its representatives." Id. at 613 n.37.  "Representative claims are 'typical' if they

21  are reasonably coextensive with those of absent class members; they need not be

22  substantially identical." Id. at 613 (quoting Hanlon, 150 F.3d at 1020) (internal quotation

23  omitted).  "Some degree of individuality is to be expected in all cases, but that specificity

24  does not necessarily defeat typicality." Staton v. Boeing Co., 327 F.3d 938, 957 (9th Cir.

25  2003).

26      In the present case, plaintiff contends that common questions of law and fact exist

27  with regard to whether Crab Addison failed to provide meal breaks for its non-exempt

28  employees, for all shifts exceeding five hours, or failed to provide rest breaks for its non-

8

United States District Court

For the Northern District of California

exempt employees, for all shifts exceeding three and a half hours, and whether these

practices are unlawful under California law; whether Crab Addison allowed its managers to

alter an employee's "clocked out" time to reduce the number of hours worked for pay

purposes, and whether as a result of this practice Crab Addison failed to pay overtime and

failed to pay for missed meal breaks; whether Crab Addison required its employees to

purchase their Joe's Crab Shack uniforms (T-shirts) without reimbursement, and whether

and how many T-shirts Crab Addison was required to provide free of charge to its

employees;  whether Crab Addison required its employees to work "off the clock" by, and

whether, as a result of this practice, employees received accurate pay statements; and

whether Crab Addison's alleged Labor Code violations constitute violations of California's

law against unfair competition.

With regard to typicality, plaintiff argues that he is an exempt hourly employee, as

are the class members he seeks to represent.  He contends that the claims for which he

seeks certification are typical of the claims of the absent class members, because his

claims arise from the same "practice or course of conduct" that forms the basis of the class

claims and because the unnamed class members have injuries that are similar to his own

injuries.  Specifically, he contends that he was not regularly provided his required meal and

rest breaks; that his managers regularly manipulated his time records to deprive him of pay

for hours worked, along with overtime and missed break pay; that he had to pay for his own

Joe's Crab Shack uniform (T-shirts) without reimbursement; and that he was required to

clock out before completing all work.

The court finds that plaintiff has established, for purposes of Rule 23(a)(2), that there

are "questions of law or fact common to the class."  Plaintiff's claims, as pled, share a

common question of law – whether any of the practices Crab Addison is alleged to have

engaged in constitute violations of California law – and at least some of the facts to be

analyzed with respect to this question are the same.  Nevertheless, the court notes that

while plaintiff has identified a list of common legal issues, he has provided little evidence

that Crab Addison has adopted common policies or has engaged in common practices in

United States District Court

For the Northern District of California

1    all its California restaurants with regard to the claims at issue.

2    In Dukes, the Ninth Circuit found that the combination of factual evidence, expert

3    opinions, statistical evidence, and anecdotal evidence provided sufficient support to raise

4    the common question whether Wal-Mart's female employees nationwide were subjected to

5    a single set of corporate policies. Id. at 612. In this case, by contrast, plaintiff concedes

6    that Crab Addison's written policies require payment of overtime, meal and rest breaks, and

7    provision of T-shirts to employees, and prohibit "off the clock" work, but claims that those

8    written policies were simply "ignored."

9    For example, plaintiff asserts, based on a sample of payroll summaries produced in

10   discovery, that Crab Addison did not pay employees for missed meal breaks. However,

11   apart from this summary of data, which plaintiff does not adequately explain, the only

12   evidence plaintiff offers is anecdotal – his own declaration and the declarations of six

13   employees (or former employees) of Crab Addison, and this anecdotal evidence is

14   contradicted by the evidence presented by Crab Addison. Nevertheless, the court finds

15   that plaintiff has alleged sufficient common issues to satisfy the requirement of Rule

16   23(a)(3).

17   It is somewhat less clear that plaintiff's claims or defenses are "typical of the claims

18   and defenses of the class." The purpose of the typicality requirement "is to assure that the

19   interest of the named representative aligns with the interests of the class." Hanon v.

20   Dataproducts Corp., 976 F.2d 497, 508 (9th Cir. 1992) (citation omitted). Typicality

21   generally "refers to the nature of the claim or defense of the class representative, and not to

22   the specific facts from which it arose or the relief sought." Id. (quotation omitted). "The test

23   of typicality is whether other members have the same or similar injury, whether the action is

24   based on conduct which is not unique to the named plaintiffs, and whether other class

25   members have been injured by the same course of conduct." Id. (internal quotation marks

26   omitted). On the other hand, class certification is inappropriate "where the putative class

27   representative is subject to unique defenses which threaten to become the focus of the

28   litigation." Id.

United States District Court

For the Northern District of California

1    Here, plaintiff's claims appear to be reasonably co-extensive with those of some of

2    the absent class members, or at least with those class members who signed declarations in

3    support of plaintiff's motion.  On the other hand, plaintiff's claims are not co-extensive with

4    those of the class members who submitted declarations in support of Crab Addison's

5    opposition to the present motion.  In analyzing whether the injury suffered by the plaintiff

6    resulted from the same discriminatory practice as the injuries suffered by the absent class

7    members, the court would first have to find that Crab Addison did in fact engage in common

8    practices with regard to the claims at issue.  Thus, plaintiff's showing under Rule 23(a)(3) is

9    inconclusive.

10    Finally, under Rule 23(a)(4), plaintiff must show that he will "fairly and adequately

11   protect the interests of the class."  Adequate representation "depends on the qualifications

12   of counsel for the representatives, an absence of antagonism, a sharing of interests

13   between representatives and absentees, and the unlikelihood that the suit is collusive."

14   Crawford v. Honig, 37 F.3d 485, 487 (9th Cir. 1994); see also Dukes, 603 F.3d at 614.  Any

15   conflict must be  serious and irreconcilable in order to defeat certification.  Breeden v.

16   Benchmark Lending Group. Inc., 229 F.R.D. 623, 629 (N.D. Cal. 2005) (citing Sosna v.

17   Iowa, 419 U.S. 393, 403 (1975)).

18    Plaintiff contends that he has no conflict with the proposed class, and in fact shares

19   the other class members' interest in redressing Crab Addison's unlawful wage and hour

20   practices.  He asserts further that he is represented by qualified and competent class

21   counsel.

22    Crab Addison's position, however, is that plaintiff would not be an adequate class

23   representative.  First, Crab Addison contends that plaintiff does not meet the required

24   standards of honesty and integrity, because he misrepresented certain facts on his job

25   application, and because he admits to abusing drugs and alcohol during the time he was

26   employed at Joe's Crab Shack, which Crab Addison asserts calls his ability to remember

27   details into question.

28    Crab Addison also asserts that while plaintiff contends that three different managers

11

**United States District Court**

For the Northern District of California

1  instructed him to work off-the-clock, those managers all deny having ever told plaintiff or

2  any employee to do so, and no other employee claims that those three managers told them

3  to work off-the-clock.  Crab Addison argues that plaintiff's assertion that there was a policy

4  to require off-the-clock work therefore raises unique credibility issues and defenses.

5       The court finds insufficient evidence in the record to support a finding that plaintiff is

6  incapable of serving as a class representative.  "[C]redibility problems do not automatically

7  render a proposed class representative inadequate."  Harris v. Vector Marketing Corp., __

8  F.Supp. 2d __, 2010 WL 4588967 at *16 (N.D. Cal., Nov. 5, 2010) (quotation and citation

9  omitted).  In general, it is only when the representative's credibility bears directly on matters

10 directly relevant to the litigation, or when the alleged conflict jeopardizes the interests of the

11 class, that the court should find the representative inadequate.  Id.

12      Crab Addison also asserts that plaintiff's counsel are not adequate, claiming that

13 they "neglected" the case and repeatedly missed critical deadlines.  The court finds,

14 however, that plaintiff's counsel are experienced in class actions, including employment-

15 related class actions.  The record submitted by Crab Addison does not support a finding

16 that plaintiff's counsel do not satisfy the requirements of Rule 23(a)(4).

17      2.      Rule 23(b)

18      Under Rule 23(b), a case may be certified as a class action only if (1) there is a risk

19 of substantial prejudice from separate actions; or (2) declaratory or injunctive relief

20 benefitting the class as a whole would be appropriate; or (3) "the questions of law and fact

21 common to class members predominate over any questions affecting only individual

22 members, and . . . a class action is superior to other available methods for fairly and

23 efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b).  Here, plaintiff seeks

24 certification of the class under Rule 23(b)(3), and must therefore show that common

25 questions predominate, and that a class action would be superior to other methods of

26 adjudication.

27      Predominance "tests whether proposed classes are sufficiently cohesive to warrant

28 adjudication by representation," a standard "far more demanding" than the commonality

**United States District Court**
For the Northern District of California

1   requirement of Rule 23(a).  Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 623-24 & n.18

2   (1997); see Dukes, 603 F.3d at 593.  "When common questions present a significant

3   aspect of the case and they can be resolved for all members of the class in a single

4   adjudication, there is clear justification for handling the dispute on a representative rather

5   than on an individual basis."  Local Jt. Exec. Bd. Culinary/Bartender Tr. Fund v. Las Vegas

6   Sands, Inc., 244 F.3d 1152, 1162 (9th Cir. 2001).  Put another way, while Rule 23(a)(2) "is

7   about invoking common questions, . . . Rule 23(b)(3) requires a district court to formulate

8   some prediction as to how specific issues will play out in order to determine whether

9   common or individual issues predominate in a given case."  Dukes, 603 F.3d at 593

10  (citations and quotations omitted).

11          Here, plaintiff argues, common issues predominate with regard to the four main

12  claims – the meal and rest break claims, the claims arising from the policy of allowing

13  managers to manipulate an employee's time records, the off-the-clock claim, and the

14  uniform claim.  Plaintiff asserts that the case revolves around issues that will be proved

15  using Crab Addison's standardized timekeeping, payroll, and other business records.

16  Thus, he contends, he is not asserting commonality based on written policies, but rather on

17  the argument that common issues predominate because the class members' identical

18  claims can be proven (or disproved) by examining class-wide business practices and

19  records.

20          First, with regard to the meal and rest breaks, plaintiff contends that the

21  predominance of common issues is shown by the fact that there is a conflict among courts

22  concerning what it means to "provide" meal and rest breaks – whether the law requires that

23  employers affirmatively ensure that employees take breaks, or whether it is sufficient for

24  employers to simply make breaks available.  See Cicairos v. Summit Logistics, Inc., 133

25  Cal. App. 4th 949, 962-63 (2005) (employers must affirmatively ensure that employees take

26  breaks); Brown v. Federal Express Corp., 249 F.R.D. 580, 585 (C.D. Cal. 2008) (employers

27  must simply make breaks available).  This dispute is presently before the California

28  Supreme Court for resolution.  See Brinker Restaurant Corp. v. Superior Court, 80 Cal.

United States District Court
For the Northern District of California

Rptr. 3d 781 (Oct. 22, 2008) (vacating and granting review in <u>Brinker Restaurant Corp. v. Superior Court</u>, 165 Cal. App. 4th 25 (2008)); <u>Brinkley v. Public Storage, Inc.</u>, 87 Cal. Rptr. 3d 674 (Jan. 14, 2009) (vacating and granting review in <u>Brinkley v. Public Storage, Inc.</u>, 167 Cal. App. 4th 1278 (2008)).[2]

Second, plaintiff contends that common issues predominate with regard to the claims concerning Crab Addison's alleged policy of allowing managers to manipulate an employee's time records.  In particular, according to plaintiff, common issues include the preliminary question whether Crab Addison's policies and procedures allowed its managers to alter the time an employee is clocked out; as well as the proof of how many hours were deducted by managers for each class member, which plaintiff asserts can easily be determined from electronic records showing each change made by a manager.

Third, plaintiff contends that common issues predominate with regard to the claim that employees were required to work "off the clock."  As with the other claims, plaintiffs argue that the question whether employees performed work while clocked out can be resolved by a review of Crab Addison's electronic records, which plaintiff claims will show when an employee was clocked in and out; the hours for which an employee was paid; and when an employee performed certain work tasks, such as placing orders, running credit cards, or closing checks and reconciling tabs.

Fourth, plaintiff argues that common issues predominate with regard to the claim that employees were required to purchase their own uniforms.  Plaintiff asserts that common issues include whether Crab Addison required class members to wear Joe's Crab Shack T-shirts, and, if so, in what condition the uniform was required to be maintained; whether Crab Addison provided T-shirts to employees, and if so, how many; whether California law required Crab Addison to pay class members for T-shirts, and if so, how

---

[2]   In response to the California Supreme Court's grant of review, the California Department of Labor Standards Enforcement issued a memo on October 23, 2008, instructing DLSE employees to follow the analysis in <u>Brown</u> and to disregard <u>Cicairos</u> because <u>Cicairos</u>' interpretation of California's meal period requirements "is not compelling."  Nevertheless, the court notes that  DLSE opinion letters are not binding and do not have the force of law.  <u>See Conley v. Pacific Gas & Elec. Co.</u>, 131 Cal. App. 4th 260, 270-71 (2005).

1  many in light of an employee's work schedule and job classification.  Again, plaintiff

2  contends that Crab Addison's own electronic records can answer all these questions.

3      In opposition, Crab Addison argues that plaintiff has not satisfied his burden under

4  Rule 23(b)(3).  Crab Addison contends that in determining predominance, the court must

5  look at the substantive issues raised by plaintiff, and whether those issues require

6  individual proof for each class member's claims.  Here, Crab Addison asserts, plaintiff's

7  own testimony does not support his claims, and the contradictions in the evidence point to

8  a need for individualized proof with regard to each of plaintiff's claims.  Thus, Crab Addison

9  argues, class certification is inappropriate.

10     Rule 23(b)(3) also requires a finding that a class action is superior to other methods

11  for fairly and efficiently adjudicating the controversy.  Factors pertinent to the court's

12  determination of whether a class action is superior to other methods of adjudication include

13     (A) the class members' interests in individually controlling the prosecution or
    defense of separate actions;

14

15     (B) the extent and nature of any litigation concerning the controversy already
    begun by or against class members;

16     (C) the desirability or undesirability of concentrating the litigation of the claims
    in the particular forum; and

17     (D) the likely difficulties in managing a class action.

18  Fed. R. Civ. P. 23(b)(3).

19     Plaintiff asserts that certifying this action as a class action is the superior method for

20  adjudicating the claims at issue, because it will promote judicial economy and facilitate

21  meaningful access to a means of redress.  Plaintiff contends that class treatment is

22  especially appropriate here, because some class members – especially those who are

23  employed by Crab Addison or who wish to continue employment in the restaurant industry

24  – may fear reprisal if they bring individual claims.  In addition,  plaintiff argues, the cost of

25  individual litigation would be prohibitive for most, if not all, class members.

26     As for the four non-exclusive factors (Rule 23(b)(3)(A)-(D)), plaintiff asserts that no

27  single class member has a significant interest in individually controlling the litigation, that he

28

United States District Court
For the Northern District of California

United States District Court

For the Northern District of California

1   is not aware of any other class action that involves similar issues, that the Northern District

2   of California is as good a venue as any in the State of California, and that managing this

3   class action will be relatively straightforward, in that the common questions of proof

4   primarily relate to Crab Addison's class-wide policies and practices, and the evidence is

5   readily available.

6   In opposition, Crab Addison contends that plaintiff has not established that class

7   treatment is a superior means of adjudication, because if the class is certified, the court will

8   become mired in 3,800 mini-trials on each of the issues addressed above. Crab Addison

9   also argues that because each putative class member has different experiences, it has the

10   due process right to raise individualized defenses against each one. Crab Addison also

11   asserts that each individual plaintiff who feels he/she has been injured has the right to a

12   quick and inexpensive administrative hearing before the DLSE, noting that one of plaintiff's

13   former co-workers, Peter Collins, did just that.

14   The court finds that the motion must be DENIED. Plaintiff's position is that common

15   questions predominate because the main issue is whether – notwithstanding Crab

16   Addison's written policies – Joe's Crab Shack restaurants in California followed a common

17   unwritten policy of denying meal and rest breaks, failing to pay employees who did not take

18   breaks, failing to pay for overtime, requiring employees to purchase their own uniforms, and

19   so forth. However, this argument confuses the question of the existence of common issues

20   of law and fact, with the question of whether common questions predominate over

21   individual questions.

22   Plaintiff also contends that the existence of a policy or practice that in effect

23   contradicts Crab Addison's written policies can be ascertained by an analysis of the data in

24   Crab Addison's computer systems. But since plaintiff has failed to adequately explain how

25   that analysis works and exactly what the data shows, he has failed to adequately establish

26   the existence of such a policy or practice.

27   In addition, most of plaintiff's arguments – particularly the arguments regarding the

28   missed meal breaks and the arguments regarding off-the-clock and overtime claims – focus

United States District Court

For the Northern District of California

1   on individualized inquiries.  The fact that the information relating to individual employees

2   may be available (or capable of being extracted) from Crab Addison's Aloha system and

3   other computerized systems does not mean that these are issues that are not dependant

4   on an individualized inquiry.

5          This conclusion is in line with Crab Addison's position, which is that common

6   questions do not predominate because the only way of answering the question regarding

7   the operation of a policy or practice in its California Joe's Crab Shack restaurants would be

8   through individualized analyses of why, in each instance, a particular employee did or did

9   not take breaks, and if he/she did or did not take breaks, whether Crab Addison paid the

10  amount owing; or whether a particular employee did or did not work "off the clock;" or

11  whether a particular employee did or did not purchase his/her own T-shirt.  In other words,

12  the only way of showing the "practice" that plaintiff claims existed at the California

13  restaurants would be to determine how when and how it was applied in each instance.

14         With regard to the meal break claim, Crab Addison has provided evidence showing

15  that in discovery, plaintiff was unable to describe the circumstances in which he was ever

16  denied a meal break, and that he also testified that he had no idea whether employees

17  were ever denied meal breaks in other Joe's Crab Shack restaurants, or whether cooks

18  and dishwashers in the restaurant where he worked had ever been denied breaks.  By

19  contrast, plaintiff now states in his declaration that he was almost never able to take a

20  break while he worked at Joe's Crab Shack, because it was so "busy" and there was no

21  one to take his place with his customers – and that he "did not miss meal periods by choice

22  [and] was almost never paid for my missed meal breaks;" and that he has also provided the

23  declarations of six other employees who claim that they, too, did not receive breaks (though

24  for reasons different than those advanced by plaintiff).

25         This court has previously taken the position that employers are required to make

26  meal breaks available, but need not compel employees to take meal breaks if they are

27  unwilling to do so.  See Perez v. Safety-Kleen Sys., Inc., 253 F.R.D. 508, 512-15 (N.D. Cal.

28  2008) (distinguishing Cicairos and citing Brown and other cases that have rejected the

United States District Court

For the Northern District of California

1    proposition that employers are required to ensure that meal breaks are taken).  Under this

2    standard, a plaintiff must do more than show that a meal break was not taken to establish a

3    violation.  Instead, he must show that the employer impeded, discouraged, or prohibited

4    him from taking a proper break.  Id.  Thus, the crucial issue with regard to the meal break

5    claim is the reason that a particular employee may have failed to take a meal break.

6         Plaintiff does not claim that Crab Addison's written meal break policy is in violation of

7    the law, and therefore cannot rely on that facially compliant policy to show that common

8    issues predominate.  In the absence of any common policy, an individualized inquiry will be

9    required to determine whether any single employee failed to take a meal break because

10   he/she was too busy, and also to determine whether a particular employee signed a waiver

11   based on a decision not to take meal breaks.  For this reason alone, common issues do not

12   predominate with regard to the meal break claim.  In addition, plaintiff's suggested solution

13   of simply examining time records to determine when meal breaks were not taken would be

14   unavailing, as that would not answer the question why the employees did not take breaks.

15        The individualized analyses required here would be further complicated by the fact

16   that many employees are scheduled to work shifts of less than four hours; the fact that

17   many have signed meal and break waivers (including at least four of the six employees or

18   former employees who submitted declarations in support of his motion); the fact that Crab

19   Addison provides "breakers" to relieve employees so they can take their breaks if they want

20   to; the fact that Crab Addison has paid for missed breaks.  Thus, not only would

21   individualized analyses have to be performed to determine whether or when employees

22   were eligible for breaks and did not take them, but the analyses into why the breaks were

23   not taken would require the parties to delve into each employee's personal preference,

24   whether a breaker was available, how busy the restaurant was, and whether Crab Addison

25   did or did not pay for the missed break (as it did on at least five occasions for plaintiff).

26   Class adjudication is not possible where such individualized determinations cannot be

27   made through common proof.

28        With regard to the rest break claim, California law requires only that employers

18

United States District Court
For the Northern District of California

1  authorize and permit employees to take rest breaks at the rate of 10 minutes for each four

2  hours worked.  Again, plaintiff does not dispute that Crab Addison's rest-break policy is fully

3  compliant with the law.  And as with the meal-break issue, plaintiff was unable to describe

4  in discovery the circumstances under which he missed any break, and testified that he had

5  no idea whether employees in other restaurants were denied breaks or whether

6  cooks/dishwashers had been denied breaks.  Now, he has submitted declarations from six

7  persons claiming they did not receive breaks (but under circumstances different than those

8  claimed by plaintiff in his own declaration).

9       Crab Addison has established that its time records will not show when rest breaks

10  were taken, because these breaks are paid and employees do not punch out when they

11  take rest breaks.[3]  For this reason, individualized analyses must be conducted to determine

12  whether and when rest breaks were not taken.  Moreover, as with the meal breaks, the

13  inquiries would not answer the critical question of why rest breaks were not taken – a

14  question that will necessitate an individualized inquiry into each employee's particular

15  circumstances.

16       With regard to the overtime claim, Crab Addison has established that it has a lawful

17  overtime policy in place, and that it has paid its California employees for more than 28,000

18  hours of overtime since January 2007.  Thus, plaintiff cannot argue that no overtime was

19  paid.  Instead, plaintiff's current position is that employees were not paid for work done "off-

20  the-clock" and that managers "shaved" their time.

21       Crab Addison has established that it has a lawful written policy prohibiting work off-

22  the-clock.  Moreover, 19 of Crab Addison's declarants have stated that they never worked

23  "off-the-clock," that they received compensation for all overtime worked, and that no other

24  employee has claimed that any manager told him/her to work "off-the-clock."  Plaintiff has

25  provided no evidence of any company-wide or class-wide policy of requiring "off-the-clock"

26  work, and the individualized assessment necessary to ascertain whether there were in fact

27  ───────────────────

28       [3] California law does not require employers to record rest periods. Cal. Code Regs. tit. 8, § 11070.

19

any employees who were told to work "off-the-clock" would not be susceptible to common proof.

With regard to the new "time-shaving" claim – which Crab Addition asserts was raised for the first time in the present motion – plaintiff nowhere claims that Crab Addison "shaved" time off his timecard or made any changes to his timecard that were not accurate. Moreover, even if there is some evidence that some manager "shaved" time off some employee's time card, there is no common proof available for such a claim, as it would not be reflected in the time records, and would depend on individualized testimony from employees who claimed that their records had been changed.

With regard to the uniform claim, Crab Addison's written policy is to provide T-shirts to employees, and to replace those T-shirts when they become worn.  Plaintiff does not assert that this policy is unlawful.  He also testified that he was unaware of whether employees in other restaurants were provided T-shirts, or even whether cooks and dishwashers in the Fisherman's Wharf Joe's Crab Shack were provided T-shirts.

While plaintiff provides declarations from six employees, who claim that they purchased T-shirts, the declarations provide no details of the circumstances under which they did so.  By contrast, a number of Crab Addison's declarants state that they were provided with T-shirts in accordance with Crab Addison's written policy.  This dispute in the evidence highlights the need for individualized inquiries.

As for plaintiff's claim that the number of T-shirts provided to employees can be determined from subtracting the number sold to customers from the number delivered to a given restaurant, that calculation would not take into account the existing inventory of T-shirts, the fact that T-shirts are provided free of charge to customers as part of promotional events, and the fact that some T-shirts may be stolen.  Moreover, plaintiff's proposed method of proof would not answer the most important question – who purchased T-shirts, or why.  The only way to determine who purchased T-shirts, and why they purchased them, is through individualized analyses, and class treatment is therefore not appropriate.

1    Plaintiff characterizes this action as a "typical wage-and-hour case of the type that is

2   routinely certified as a class action."  It is true that courts, including this courts, often find

3   wage-and-hour cases to be appropriate for class treatment.  Nevertheless, there is no rule

4   that requires that wage-and-hour claims be certified for class treatment regardless of the

5   evidence submitted in support of the motion for certification.  See, e.g., Spainhower v. U.S.

6   Bank N.A., 2010 WL 1408105 (C.D. Cal., March 25, 2010) (denying class certification in

7   wage-and-hour case because plaintiffs failed to establish predominance under Rule 23(b));

8   Koike v. Starbucks Corp., 2008 WL 7796650 (N.D. Cal., June 20, 2008) (same), aff'd, 378

9   Fed. Appx. 659, 2010 WL 1784727 (9th Cir., May 5, 2010); Garcia v. Sun Pacific Farming

10  Coop., 2008 WL 2073979 (E.D. Cal., May 14, 2008) (same), aff'd, 359 Fed. Appx. 724,

11  2009 WL 4912213 (9th Cir., Nov. 13, 2009).

12    In this case, the court finds that class certification is not warranted because plaintiff

13  has not met his burden of showing that the questions of law and fact common to class

14  members predominate over questions affecting only individual members, or of showing that

15  a class action would be a superior method of resolving these claims.

16                                          **CONCLUSION**

17    In accordance with the foregoing, the court finds that plaintiff's motion for class

18  certification must be DENIED.

19

20  **IT IS SO ORDERED.**

21  Dated: December 23, 2010

22                                          _____
                                            PHYLLIS J. HAMILTON
23                                          United States District Judge

24

25

26

27

28

United States District Court
For the Northern District of California